## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| AMATEUR TRAPSHOOTING ASSOCIATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  3:06-CV-734JPG |
| | ) | |
| RICH DILLON, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant | ) | |

## COMPLAINT

This is an action for federal trademark infringement, unfair competition and federal dilution pursuant to the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a) and (c), as well as related claims for state unfair competition and deceptive trade practices.  The plaintiff seeks injunctive relief, compensatory and punitive damages, as well as attorney's fees and costs.

### JURISDICTION AND VENUE

1.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).  The Amateur Trapshooting Association's (herein "ATA") claims arise under the Lanham Act, 15 U.S.C. §§ 1114 and 1125.  This Court has jurisdiction over the ATA's related claims under 28 U.S.C. §§ 1338(b) and 1367, because these causes of action for trademark infringement and unfair competition form part of the same case or controversy.

2.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rising to the ATA's claims occurred in this judicial district.

### PARTIES

3.     The ATA is a Delaware corporation presently having its principal place of business at 601 West National Road, Vandalia, Ohio 45377-1036, however, the ATA is in the

3426994

process of relocating its principal place of business to Sparta, Illinois, located in this judicial district.

4.      Upon information and belief, the Defendant Rich Dillon (herein "DILLON") is an individual residing at 403 Maple Avenue, Oaktown, Indiana 47561.  Upon information and belief, DILLON has sold products bearing the mark at issue in Sparta, Illinois, within this judicial district.

## FACTS COMMON TO ALL COUNTS

### The ATA and its Trademarks

5.      The ATA was founded in 1900 as the American Trapshooting Association, which name was later changed, in 1923, to the Amateur Trapshooting Association.

6.      The ATA is the governing body for the sport of American style trapshooting.  It has established rules and regulations for the sport, and also seeks to promote the sport throughout the world by stimulating participation.  The ATA provides awards, financial assistance and event management to related state and provincial associations.  The ATA has also been instrumental in developing programs to increase interest in the sport with its creation of National Trapshooting Day, Satellite Grand Americans, Achievement Recognition and other valuable programs.

7.      From at least as early as August 15, 1924 to the present, the ATA has owned and exercised legitimate control, and continues to own and exercise legitimate control, over nationwide use of the ATA AMATEUR TRAPSHOOTING ASS'N MEMBER mark ("ATA Member Mark").

8.      As a result of the ATA's long and continuous use of the ATA Member Mark, the ATA has acquired valuable property rights in the mark.

9.      On June 18, 1963, the United States Patent and Trademark Office ("PTO") issued a registration to the ATA for its ATA Member Mark, U.S. Reg. No. 751,450, based on use by its members to signify membership in a corporate association sponsoring and engaged in amateur trapshooting since at least as early as August 15, 1924.   A true and correct copy of this registration is attached hereto and incorporated as Exhibit 1.

10.     By virtue of its continued exercise of legitimate control over its use by members, the ATA continues to own the entire right, title and interest in and to the ATA Member Mark.

11.     U.S. Reg. No. 751,450 is incontestable.

12.     Since its introduction of the ATA Member Mark, the ATA has used it nationally.

13.     The ATA has spent a substantial sum of money in its many years of nationwide advertising efforts through mediums such as mailings, newspapers, magazines, and trade shows. Because of this long term exposure, the ATA and the ATA Member Mark have become well known among those interested in trapshooting.

14.     The ATA has created tremendous goodwill in the ATA Member Mark.

15.     The ATA Member Mark has become famous.

16.     The ATA possesses the exclusive right to use the ATA Member Mark.

17.     The ATA has the right to exclude others from using any mark that is  confusingly similar to the ATA Member Mark.

## DILLON'S USE OF THE "ATA LIFE MEMBER" MARK

18.     In this judicial district and elsewhere,  DILLON sells products such as hats, which are marked "ATA LIFE MEMBER."   An example of the products is attached hereto and incorporated as Exhibit 2.   ATA personnel observed DILLON'S use of the "ATA LIFE MEMBER" mark on his products during a recent competition at the World Shooting & Recreational Complex in Sparta, Illinois.   The ATA is sponsoring an additional event at the World Shooting & Recreational Complex October 10 through October 15, 2006 that will prominently display the ATA Member Mark.

19.     DILLON's use of the  "ATA LIFE MEMBER" mark is likely to cause confusion with the ATA Member Mark.

20.     The unauthorized use of so similar a mark is likely to cause confusion as to the source of origin or sponsorship of DILLON and his products with the ATA.

21.     The unauthorized use of so similar a mark is likely to falsely suggest a connection of DILLON with the ATA.

22.     Consumers recognize the ATA Member Mark as pointing uniquely and unmistakably to the ATA.

23.     The ATA is not connected with DILLON, nor has it approved of the goods DILLON is selling that bear the "ATA LIFE MEMBER" mark.

24.     The fame or reputation of the ATA in, among other places, Sparta, Illinois, is such that DILLON's use of the "ATA LIFE MEMBER" mark on his products would cause consumers to presume a connection.

25.     Upon information and belief, DILLON made no actual or constructive use of the "ATA LIFE MEMBER" mark prior to the first use of the ATA Member Mark.

26.     Upon information and belief, DILLON has advertised his goods throughout the United States, including the state of Illinois.

27.     Shortly after learning of DILLON's infringing use, the ATA, through its attorney, wrote to DILLON charging him with trademark infringement and demanded that DILLON cease and desist from all use of the "ATA LIFE MEMBER" mark.  A true and correct copy of the letter is attached hereto and incorporated as Exhibit 3.

28.     DILLON has not responded to Exhibit 3 and is, upon information and belief, continuing to use the "ATA LIFE MEMBER" mark, despite his knowledge of the ATA Member Mark.

29.     The ATA is incurring, and will continue to incur damages because of DILLON's unauthorized use of the "ATA LIFE MEMBER" mark.

**COUNT I**
**Trademark Infringement under 15 U.S.C. § 1114**

30.     The foregoing paragraphs 1 through 29 are incorporated herein by reference.

31.     The ATA is the Registrant and record owner of U.S. Trademark Registration No. 751,450 which issued on June 18, 1963 for the ATA Member Mark.

32.     The ATA's Registration No. 751,450 is prima facie evidence of the validity of ATA's ownership and exclusive right to use the ATA Member Mark in commerce.

33.     DILLON's use of the "ATA LIFE MEMBER" mark is made without the ATA's permission, with knowledge of the ATA's prior use and rights in the ATA Member Mark, with knowledge of the impact DILLON's infringing activities would have on the ATA, with knowledge of actual confusion, and with knowledge that such use is likely to continue to cause confusion, or to cause mistake, or to deceive.

3426994                                    5

34.     DILLON's use of the "ATA LIFE MEMBER" mark, made without the ATA's permission and with knowledge of the ATA's prior use and rights in its mark, is a misappropriation of the ATA's mark for the unlawful purpose of causing confusion or mistake, or to deceive the public and trade.

35.     DILLON's actions have caused, and will continue to cause, a likelihood of confusion, mistake or deception, all to the ATA's irreparable injury and DILLON's unjust enrichment and benefit in violation of 15 U.S.C. §1114 (Section 32 of the Lanham Act).

36.     DILLON's activities in conjunction with its use of the "ATA LIFE MEMBER" mark are willful and intentional acts and are causing confusion of the public to the detriment of the ATA and its business reputation.

37.     Since being notified of trademark infringement, DILLON has intentionally continued to engage in unreasonable and willful acts demonstrating a disregard of lawful activity that collectively evidence a planned and directed effort to trade upon the good will and business success of the ATA.

38.     The ATA has no adequate remedy at law and will continue to suffer irreparable harm if DILLON is allowed to continue to use the "ATA LIFE MEMBER" mark.

## COUNT II
**Trademark Infringement and Unfair Competition under 15 U.S.C. § 1125**

39.     The foregoing paragraphs 1 through 38 are incorporated herein by reference.

40.     DILLON has been and is infringing the ATA's Member Mark trademarks and engaging in unfair competition.

41.     The ATA owns valid trademark rights in the ATA's Member Mark.

42.     DILLON's use of the "ATA LIFE MEMBER" mark is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection or association of DILLON with

the ATA, or as to the origin, sponsorship or approval of DILLON's goods or commercial activities by the ATA.

43.     DILLON's conduct has damaged and will continue to damage and irreparably harm the ATA.

## COUNT III
### Federal Dilution

44.     The foregoing paragraphs 1 through 43 are incorporated herein by reference.

45.     DILLON's continued use of the "ATA LIFE MEMBER" mark lessens the capacity of the ATA Member Mark to identify and distinguish the ATA from others.

46.     The ATA Member Mark is a famous mark within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

47.     The actions of DILLON in connection with its use of the "ATA LIFE MEMBER" mark are likely to injure the ATA's business reputation, impair the effectiveness of the ATA Member Mark to identify and distinguish the ATA from others, and have diluted the distinctive quality of the ATA Member Mark thereby constituting unlawful dilution in violation of the Federal Antidilution Act.

48.     By reason of the foregoing acts of DILLON, the ATA has sustained -- and unless DILLON is enjoined -- will continue to sustain substantial injury, damage and continuing irreparable harm for which the ATA has no adequate remedy at law if DILLON is allowed to continue to use the "ATA LIFE MEMBER" mark in any form.

## COUNT IV
### Common Law Trademark Infringement

49.     The foregoing paragraphs 1 through 48 are incorporated herein by reference.

50.     The ATA's substantially continuous and exclusive ownership and exercise of legitimate control over the use of the ATA Member Mark throughout the United States, including Illinois, has entitled it to common law trademark rights.

51.     The public and trade have come to identify the ATA Member Mark with the ATA.

52.     DILLON's use of the "ATA LIFE MEMBER" mark is likely to cause members of the public and trade to believe that the goods of DILLON marketed and sold thereunder originates with or are produced by, or are associated with, endorsed by, or under the sponsorship or control of the ATA.

53.     The ATA has no control over the quality of the goods DILLON markets and sells under the "ATA LIFE MEMBER" mark with the result that the ATA's valuable goodwill may be irreparably injured by the acts of DILLON.

54.     By reason of the foregoing acts of DILLON, the ATA has sustained -- and unless DILLON is enjoined -- will continue to sustain substantial injury, damage and continuing irreparable harm for which the ATA has no adequate remedy at law if DILLON is allowed to continue to use the "ATA LIFE MEMBER" mark in any form.

## COUNT V
## Common Law Unfair Competition

55.     The foregoing paragraphs 1 through 54 are incorporated herein by reference.

56.     The acts by DILLON alleged in this Complaint constitute willfully-undertaken unfair and deceptive acts and practices in trade or business.

57.     DILLON has attempted to use these unfair acts and business practices to hinder competition by the ATA.   Such acts and practices constitute unfair competition under the common law of the State of Illinois.

58.     By reason of the foregoing acts of DILLON, the ATA has sustained -- and unless DILLON is enjoined -- will continue to sustain substantial injury, damage and   continuing irreparable harm for which the ATA has no adequate remedy at law if DILLON is allowed to continue to use the "ATA LIFE MEMBER" mark in any form.

**COUNT VI**
**Violation of Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/2)**

59.     The foregoing paragraphs 1 through 58 are incorporated herein by reference.

60.     DILLON's use of the "ATA LIFE MEMBER" mark constitutes a false representation that DILLON has acquired or has a sponsorship, approval, affiliation or connection with the ATA which DILLON does not, in fact, have.

61.     DILLON's continued use of the "ATA LIFE MEMBER" mark will continue to cause confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services of the ATA unless such use by DILLON is enjoined.

62.     DILLON's use of the "ATA LIFE MEMBER" mark without the consent or authorization of the ATA constitutes a deceptive trade practice in violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2.

## PRAYER FOR RELIEF

WHEREFORE, the ATA hereby prays for judgment against DILLON as follows:

1.      Permanently enjoining and restraining DILLON, his agents, servants, employees, attorney's and all persons in active concert, privity or participation with them and each of them individually from doing, abiding, causing or abetting any of the following:

>    (a)    directly or indirectly infringing ATA's trademarks or any colorable imitation or confusingly similar facsimile thereof;

>    (b)    engaging in any acts or activities directly or indirectly calculated to trade upon ATA's mark, or the reputation or goodwill of ATA, or in any manner unfairly compete with ATA; and/or

>    (c)    use of the "ATA LIFE MEMBER" mark in commerce.

2.      Directing DILLON to file with this Court and serve on the ATA within three (3) days after service of the injunction order herein prayed for a report in writing, under oath, setting forth in detail the manner and the form in which DILLON has complied with such order;

3.      Directing DILLON to undertake corrective advertising sufficient to absolutely distance and distinguish DILLON, his business products, goods and/or services, from the ATA;

4.      Directing an accounting to be had of DILLON's sales and profits and that judgment be rendered against DILLON for: (a) all profits derived by DILLON from the conduct of the above-complained of activities; (b) all damages suffered by reason of DILLON's infringing activities and that such damages be trebled; and (c) DILLON's attorneys' fees and costs pertaining to this action; and

5.      Awarding the ATA such other and further relief as this Court may deem just and proper.

Respectfully submitted,

THOMPSON COBURN LLP

By: _____
Nicholas B. Clifford, Jr., # 6220587
Matthew A. Braunel, # 6276394
One US Bank Plaza
St. Louis, MO 63101
Phone:  314-552-6000
Fax:  314-552-7000

Of Counsel:

BONE McALLESTER NORTON, PLLC

Anne C. Martin
Paul W. Kruse
Bone McAllester Norton PLLC
511 Union Street
Suite 1600
Nashville, Tennessee 37219
(615) 238-6300

3426994